UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                                            x      04 Civ. 4885 (SWK)
In re ALLIANCEBERNSTEIN MUTUAL    x
FUND EXCESSIVE FEE LITIGATION     x      **OPINION**
                                                            x
------------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

**I.**

On February 4, 2005, Plaintiffs in this action filed an Amended Complaint alleging a variety of direct and derivative claims against the advisors, distributors, and directors of the AllianceBernstein mutual funds (the "Funds"). On October 19, 2005, this Court dismissed all of Plaintiffs' claims except for a single cause of action brought under Section 36(b) of the Investment Company Act of 1940 ("ICA") against Alliance Capital Management L.P., Alliance Capital Management Holding L.P., and the Alliance Capital Management Corporation (together, the "Investment Adviser Defendants"). See In re AllianceBernstein Mutual Fund Excessive Fee Litig., No. 04 Civ. 4885, 2005 U.S. Dist. LEXIS 24263 (S.D.N.Y. Oct. 19, 2005). The Investment Adviser Defendants moved for reconsideration of this remaining claim, pursuant to Federal Rule of Civil Procedure 59(e). On January 11, 2006, this Court granted that motion and dismissed the last of Plaintiffs' claims. See In re AllianceBernstein Mutual Fund Excessive Fee Litig., No. 04 Civ. 4885, 2006 U.S. Dist. LEXIS 939 (S.D.N.Y. Jan. 11, 2006). Plaintiffs now move

for leave to amend the Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a). For the reasons set forth below, the motion is denied.

## II.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990) (citation and internal quotation marks omitted). However, leave to amend should be denied in situations where the amendment would be futile, see Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995), or otherwise unproductive. See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam). An amendment is considered futile "if the proposed claim could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." Lucente v. Int'l Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)).

## III.

Plaintiffs' motion for leave to amend is denied because it would be futile to allow Plaintiffs to replead their Section 36(b) claim. Many of the allegations made in the Proposed Second

2

Amended Complaint ("PSAC") are either repetitive or serve to undermine Plaintiffs' motion. These allegations, in large part, rely on: (1) a settlement between the Funds' distributor, AllianceBernstein Investment Research Management, Inc. ("ABIRM"), and the NASD; (2) background information concerning the Funds' directors; (3) statements made within Senior Officer Summary Reports (the "Reports"); and (4) historical data on various Funds' net asset levels and expense ratios. Because the PSAC would not survive a motion to dismiss, leave to amend is denied.

First, Plaintiffs point to regulatory action taken by the NASD against ABIRM as evidence of the Investment Adviser Defendants' excessive management fees. On June 8, 2005, the NASD announced in a press release that it had fined ABIRM $3,984,087 for violating the NASD's Anti-Reciprocal Rule by engaging in a series of shelf-space programs with various brokerage firms. However, the significance of the NASD action was previously litigated by the parties and was taken into account by this Court in its decision to dismiss the Amended Complaint. (Pl.'s Opp. to Motion to Dismiss 2-3; Def.'s Reply in Support of Motion to Dismiss 2-3; Reese Decl. Ex. G.) This Court considered the NASD action to be immaterial because it focused exclusively on ABIRM'S improper relationship with brokerage firms and refrained from commenting on the size of the Funds' advisory fees. This

allegation, therefore, was previously considered and does not aid Plaintiffs' motion for leave to amend.

Plaintiffs have also litigated the issue of director independence at great length. (Def.'s Mot. For Recons. 7-10; Pl.'s Opp'n to Mot. for Recons. 13-16; Def.'s Reply 4-5.) Nonetheless, the PSAC reiterates the Amended Complaint's allegations that the Funds' directors (1) received generous salaries; (2) served on interlocking boards; (3) could not devote the proper time to meetings; and (4) were recommended for their positions by the Investment Adviser Defendants. Based on the reasoning in <u>Verkouteren v. BlackRock Fin. Mgmt., Inc.</u>, 98 Civ. 4673, 1999 U.S. Dist. LEXIS 10892 (S.D.N.Y. July 20, 1999), <u>aff'd</u>, 203 F.3d 204 (2d Cir. 2000) and <u>Migdal v. Rowe Price-Fleming Int'l</u>, 248 F.3d 321 (4th Cir. 2001) this Court ruled that such allegations fail to rebut the ICA's statutory presumption in favor of director independence. <u>See</u> <u>In re AllianceBernstein</u>, 2006 U.S. Dist. LEXIS 939, at *9-11. Though the PSAC also mentions the limited corporate experience of two of the Funds' directors, this observation would not disturb the Court's previous finding on the issue of director autonomy.

The PSAC's introduction of Senior Officer Summary Reports actually weakens Plaintiffs' motion for leave to amend. Based on a settlement with the New York State Office of the Attorney General, each Fund is now required to hire a senior officer to

4

conduct an independent evaluation of the Funds' management fees on an annual basis. Though Plaintiffs employ such Reports to highlight the existence of fall-out benefits and fee discrepancies for institutional and retail clients, one such Report maintains that "[n]either case law nor common business practice precludes the Adviser's affiliates from earning a reasonable profit" from fall-out benefits and comments that "[t]he fee differential reflects, among other things, different services provided to such clients, and different liabilities assumed." (AllianceBernstein Global Technology Fund Inc. Report 7, 3, Dec. 7, 2005.) More importantly, the AllianceBernstein Global Technology Inc. Report concludes that advisory fees were "reasonable and within the range of what would have been negotiated at arms-length in light of all the surrounding circumstances." (AllianceBernstein Global Technology Fund Inc. Report 11, Dec. 7, 2005.) Thus, the Reports independently endorse the fee levels at issue, contradicting Plaintiffs' allegations.

Next, Plaintiffs revisit the Amended Complaint's allegation that the Investment Adviser Defendants failed to pass on the benefits of economies of scale to shareholders. But many of the statistics quoted in the PSAC suggest the opposite by establishing that the expense ratios for the Global Strategic Income Trust, Utility Income Fund, Global Technology Fund, and

5

the Large Cap Growth Fund declined between 2003 and 2004.[1] (PSAC ¶¶ 67, 68, 70, and 65.) The PSAC's inclusion of these statistics undercuts Plaintiffs' renewed allegation that the Investment Adviser Defendants failed to share the benefits of economy of scales with investors between June 22, 2003 and June 22, 2004.[2]

Furthermore, this Court's January 11, 2006 Opinion dismissed Plaintiffs' Section 36(b) claim because the Amended Complaint relied heavily on expense ratio and net asset level statistics that provided minimal insight into whether the Investment Adviser Defendants passed on the benefits of economies of scale to shareholders during the relevant time period. Despite that Opinion's warnings, the PSAC lists more statistics that largely fall outside the relevant time period. For example, the PSAC identifies increases in the expense ratio of the Balance Shares Fund over a three year period that overlaps with less than two months of the applicable time period. (PSAC ¶ 81.) Plaintiffs' inability to remedy these types of statistical defects demonstrates the futility of amending the Amended Complaint.

---

[1] This outcome is not surprising in light of the Investment Adviser Defendants' agreement with the New York State Office of the Attorney General to reduce management fees by $70 million on January 2, 2004. (PSAC ¶ 63.)

[2] Because Plaintiffs filed their initial complaint on June 22, 2004, they must plead facts demonstrating the existence of excessive advisory fees between June 22, 2003 and June 22, 2004. See In re AllianceBernstein, 2006 U.S. Dist. LEXIS 939, at *5-8.

IV.

For the reasons set forth above, Plaintiffs' motion for leave to amend is denied. On February 9, 2006, the Clerk of Court entered a final judgment in this case, despite the fact that the Investment Adviser Defendants moved for leave to amend on February 1, 2006. For the purpose of rendering the instant decision, the Court vacates the February 9, 2006 judgment pursuant to Federal Rule of Civil Procedure 60(a). But in light of this Opinion, the Clerk is instructed to re-enter judgment and dismiss this case with prejudice.

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

DATED:   New York, New York
         May 31, 2006

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/31/06